Date signed January 28, 2010



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

In re:

Lightwave Communications, LLC           Case No. 08-11877-TJC
    Debtor                                  Chapter 11

Lightwave Communications, LLC

    Movant

                               Docket No. 362, 368

v.

Broadview Networks, Inc., et al.

    Respondent

## MEMORANDUM OF DECISION

Lightwave Communications, LLC ("Lightwave"), the debtor-in-possession in this chapter 11 bankruptcy case, brings this Motion to Exclude Broadview's Supplemental

1

Claim Notice, Docket No. 362 (the "Motion"), seeking to strike an alleged new claim asserted by Broadview Networks, Inc. and Broadview Networks of Virginia, Inc. (collectively "Broadview").  Lightwave contends that Broadview asserted a new claim against a holdback amount under an asset purchase agreement between the parties, and the new claim is time barred by the terms of the agreement.  Broadview opposes the Motion and states that it has not asserted a new claim, but only amended the damage calculation of a timely-filed earlier claim.  For the reasons set forth herein, the Court will grant the Motion and exclude evidence and argument relating to the new claim.

## FINDINGS OF FACT

Lightwave filed for chapter 11 relief on February 11, 2008.  It has remained as debtor-in-possession throughout the bankruptcy case.

By May 2008, Lightwave received a signed contract from Broadview for the purchase of substantially all of its assets.  On June 12, 2008, Broadview and Lightwave entered into an Amended and Restated Asset Purchase Agreement (the "APA") pursuant to which Broadview purchased substantially all of Lightwave's assets.  By order entered on July 15, 2008, the Court approved the sale and authorized Lightwave to consummate the APA.  The sale closed on September 18, 2008 (the "Closing Date").

In accordance with the APA, Broadview retained $750,000 (the "Holdback Amount") of the purchase price to be applied against damages Broadview might incur from any breaches by Lightwave of various provisions of the APA.  The deadline under the APA for Broadview to file claims against the Holdback Amount was September 18, 2009.  On September 16, 2009, Broadview submitted to Lightwave a letter (the "Claims Notice") asserting claims for damages incurred as a result of Lightwave's alleged

breaches of certain representations, warranties, covenants and obligations under the APA. In the Claims Notice, Broadview alleged four specific breaches of the APA by Lightwave (the "Claims"). The four Claims are generally referred to by the parties as follows:

- The Telecom on Demand Claim
- The Verizon Disputes Claim
- The Verizon Shortfall Calculation Claim
- The Seller Vendor Obligations Claim

Broadview did not pay the Holdback Amount to Lightwave because it asserted the Claims. On September 25, 2009, in response to the Claims Notice, Lightwave filed its Motion to Enforce Sale Order, which it modified on September 30, 2009 ("Motion to Enforce"), seeking to compel Broadview to pay the Holdback Amount. Broadview filed an opposition to the Motion to Enforce, and the Court entered a Scheduling Order on October 16, 2009 setting December 16, 2009 as the discovery deadline. A two-day hearing on the Motion to Enforce was originally scheduled to begin on January 7, 2010. By agreement of the parties, and with the Court's authorization, the hearing was continued and is set for February 25 and 26, 2010.

Broadview submitted to Lightwave a letter dated December 10, 2009 (the "Supplemental Claim Notice") in which it purports to supplement the Claims Notice on two of the four Claims, namely the Seller Vendor Obligations Claim and the Verizon Disputes Claim. Lightwave does not object to the Supplemental Claim Notice to the extent it applies to the Seller Vendor Obligations Claim. With respect to the Verizon Disputes Claim, however, Lightwave contends that the Supplemental Claim Notice is not a supplement to the Verizon Disputes Claim, but rather asserts a new claim that is time

barred by the provisions of the APA.  Accordingly, on December 23, 2009, Lightwave filed the Motion, requesting that the Court strike the Supplemental Claim Notice as it relates to the Verizon Disputes Claim and exclude all evidence on the new claim that Lightwave contends Broadview asserts in the Supplemental Claim Notice.  The parties fully briefed the matter and the Court held a hearing on the Motion on January 8, 2010.

The Motion must be resolved by reference to the APA, which sets forth the parties' agreement concerning the timing and procedure for resolving claims against the Holdback Amount.  Section 4.2(b) of the APA states:

> The Holdback Amount shall be delivered to [Lightwave] on the twelve (12) month anniversary of the Closing Date, unless [Broadview] in good faith ha[s] notified [Lightwave] of (i) one or more Losses or Expenses on or prior to such date in accordance with Section 11.1(b) . . . in which case[] the portion of the Holdback Amount equal to such Losses or Expenses . . . shall be retained by [Broadview] until the Liability of [Lightwave] shall have been finally determined pursuant to Article XI . . . .

APA § 4.2(b).

Article XI of the APA identifies the kinds of Losses and Expenses for which indemnification against the Holdback Amount is permitted, and describes the detail that must be included in the notice thereof.  Section 11.1 of the APA states:

> 11.1. Indemnification by [Lightwave].
>
> (a) [Lightwave agrees] to indemnify and hold harmless [Broadview] from and against any and all Loss and Expense incurred by [Broadview] in connection with or arising from:
>
> (i) any breach by [Lightwave] of any of its covenants in [the APA];
>
> (ii) any failure of [Lightwave] to perform any of its obligations in [the APA]; or

4

> (iii) any breach of any warranty or the inaccuracy of any representation of [Lightwave] contained or referred to in [the APA] or any certificate delivered by or on behalf of [Lightwave] pursuant hereto; . . .
>
> * * *
>
> (b) The indemnification provided for in this Section 11.1 . . . shall terminate twelve (12) months after the Closing Date (and no claims shall be made by [Broadview] under this Section 11.1 thereafter), except that the indemnification by [Lightwave] shall continue as to any Loss or Expense of which [Broadview] has notified [Lightwave] . . . as to which the obligation of [Lightwave] shall continue until the Liability of [Lightwave] shall have been determined pursuant to this Article XI, and [Lightwave] shall have reimbursed [Broadview] for the full amount of such Loss and Expense in accordance with this Article XI.

APA § 11.1(b).

Section 11.3 of the APA describes the detail to be included in a notice of a claim against the Holdback Amount:

> 11.3. Notice of Claims.
>
> (a) Any Buyer Group Member or Seller Group Member (the "Indemnified Party") seeking indemnification hereunder shall give to the Party obligated to provide indemnification to such Indemnified Party (the "Indemnitor") a notice (a "Claim Notice") describing in reasonable detail the facts giving rise to any claim for indemnification hereunder and shall include in such Claim Notice (if then known) the amount or the method of computation of the amount of such claim, and a reference to the provision of this Agreement or any other agreement, document or instrument executed hereunder or in connection herewith upon which such claim is based; . . .
> * * *
>
> (c) After the giving of any Claim Notice pursuant hereto, the amount of indemnification to which an Indemnified Party shall be entitled under this Article XI shall be determined: (i) by the

5

> written agreement between the Indemnified Party and the
> Indemnitor; (ii) by a final judgment or decree of any court of
> competent jurisdiction; or (iii) by any other means to which the
> Indemnified Party and the Indemnitor shall agree.  The judgment
> or decree of a court shall be deemed final when the time for appeal,
> if any, shall have expired and no appeal shall have been taken or
> when all appeals taken shall have been finally determined.  The
> Indemnified Party shall have the burden of proof in establishing
> the amount of Loss and Expense suffered by it.

APA § 11.3(c).

These provisions will be addressed as relevant below.

All parties understood that upon consummation of the APA transaction, Lightwave would cease all operations, confirm a plan of liquidation, and distribute all available proceeds to creditors and other parties in interest.  Lightwave filed a disclosure statement, which the Court approved, and a chapter 11 plan, which the creditors accepted.  The Court continued the hearing on plan confirmation until after resolution of the Motion because it could have an effect on the amount available for distribution under the plan.

## CONCLUSIONS OF LAW

Lightwave contends that the Supplemental Claim Notice asserts a new claim that is different from the Verizon Disputes Claim and therefore is time barred by the APA.  Broadview disagrees and argues that the Supplemental Claim Notice merely sets forth a different damage calculation for the Verizon Disputes Claim.  For the reasons stated herein, the Court concludes that the Supplemental Claim Notice asserts a new claim and Broadview is time barred from asserting it under the APA.  The Court determines that even if the Supplemental Claim Notice is only a different damage calculation of the Verizon Disputes Claim, that new damage calculation would be time barred under the APA.

6

Resolution of these issues is a matter of contract law. By its terms, the APA is governed by Delaware law. APA § 13.4. The cardinal rule of contract interpretation and construction is to determine the parties' intent at the time they entered into the contract. *Turek v. Tull*, 147 A.2d 658, 662 (Del. 1958).[1] The parties' intent must be determined from the language of the contract, if it is unambiguous.

First, the Court concludes that the provisions of the APA that are pertinent to the issues raised by the Motion are not ambiguous. As pertinent here, Section 4.2 requires that Broadview "shall" deliver the Holdback Amount to Lightwave "on the twelve (12) month anniversary of the Closing Date unless [Broadview] in good faith ha[s] notified Lightwave . . . in accordance with Section 11.1(b)." APA § 4.2(b). Section 11.1(b) provides that "[t]he indemnification provided for in this Section 11.1 . . . shall terminate twelve (12) months after the Closing Date (and no claim shall be made by [Broadview] . . . thereafter . . . ." APA § 11.1(b). Thus, as applicable here, the APA required that any claim under the Holdback Amount must be asserted by September 18, 2009, the twelve month anniversary of the Closing Date.

As Lightwave points out, this bargained-for deadline was of crucial importance to it. The sale of its assets under the APA would mean that Lightwave would have no further business operations. Lightwave intended to consummate the sale, confirm its plan, make distributions to parties in interest, and resolve the bankruptcy case. The disposition of the Holdback Amount and any claims under the APA is necessary for Lightwave to confirm its plan of reorganization and make distributions to parties in interest. In the APA, Lightwave needed a date certain by which it would know whether

---

[1] Neither party has cited any contract law or principles, apparently content to rely on the legal principle that an unambiguous contract should be applied as written.

Broadview would assert any claims so it could confirm the plan, make distributions without fear of future claims, and proceed to close the case. The Court concludes, therefore, that the language of the APA should be enforced as written, and that it established a hard and fixed deadline for Broadview to assert claims except for certain circumstances not pertinent here.

Section 11.3(a) of the APA sets forth a clear description of the procedure for asserting a claim. It provides that a party seeking indemnification shall

> give to the Party obligated to provide indemnification to such Indemnified Party (the "Indemnitor") a notice (a "Claim Notice") describing in reasonable detail the facts giving rise to any claim for indemnification hereunder and shall include in such Claim Notice (if then known) the amount or the method of computation of the amount of such claim, and a reference to the provision of this Agreement or any other agreement, document or instrument executed hereunder or in connection herewith upon which such claim is based; . . . .

APA § 11.3(a). Thus, the APA requires that a claim notice must (1) provide in reasonable detail the facts that give rise to the claim; (2) if known at the time, the amount of the claim or the method of computation of the amount of the claim; and (3) a reference to the provision in the pertinent document upon which the claim is based.

In the Claims Notice, Broadview set forth the following claim for the Verizon Disputes Claim:

> Sellers breached the financial representations and warranties set forth in Section 5.4 of the Agreement. Sellers breached these representations and warranties by providing Buyers with consolidated balance sheets and consolidated statements of operations and cash flows which did not fairly present in all material respects the consolidated financial position and results of operations of the Sellers as of the dates of such materials and for the periods covered by them. The consolidated balance sheets and consolidated statements of operations and cash flows provided by Sellers to Buyers substantially understated Sellers'

8

> carrier costs. This understatement of carrier costs resulted from Sellers crediting disputes over charges registered with Verizon which were not well founded. Sellers' understatement of carrier costs inflated Sellers' asserted Net Ordinary Income, which was the basis for Buyers' valuation of Sellers' assets. The erroneously inflated Net Ordinary Income resulted in Buyers overpaying for the Purchased Assets by $1,702,973. <u>Details as to the erroneous disputes relied upon by Sellers are set forth in Exhibit B.</u>

Claims Notice, p.2 (emphasis added). Exhibit B, in turn, consisted of four pages. The first page is a Lightwave January-March 2008 comparative income statement, showing the income and expenses as reported by Lightwave and the income and expenses as adjusted by Broadview under the Verizon Disputes Claim. The sole adjustment is for $86,133 of "Unsubstantiated Verizon Disputes" which Broadview includes in Lightwave's Cost of Goods Sold ("COGS"). By including the $86,133 of "Unsubstantiated Verizon Disputes" in COGS, Broadview recalculates a lower Adjusted Net Ordinary Income amount for the period. Because the purchase price was apparently based on a multiple of net income, Broadview then calculates the difference in the purchase price Broadview would have paid for Lightwave's assets if Lightwave had included the $86,133 of "Unsubstantiated Verizon Disputes" in its COGS. Thus, page 1 of Exhibit B identifies that $86,133 of "Unsubstantiated Verizon Disputes" were the charges that Broadview asserts are "not well founded" and sets forth the damage calculation for the Verizon Disputes Claim.

   Page 2 of Exhibit B lists the 15 specific line items that constitute the $86,133 of "Unsubstantiated Verizon Disputes" that Broadview asserts are "not well founded" for each month of January, February, and March 2008. The remainder of page 2 and pages 3 and 4 of Exhibit B then provide a fairly detailed description of each of the 15 line items

that make up the $86,133 of "Unsubstantiated Verizon Disputes" and the alleged reason each line item was "not well founded."

Therefore, the Claims Notice sets forth a detailed, specific description of the following Verizon Disputes Claim: In the January through March 2008 financial statements, Lightwave did not include numerous Verizon charges (which the parties agree total $414,038) in the COGS because Lightwave disputed those charges. The January through March 2008 financial statements did not fairly represent the financial position and operations of Lightwave because 15 of those disputed Verizon charges, totaling $86,133, were "not well founded" and should have been included (or at least reserved for) in COGS on Lightwave's income statement. The Claims Notice included reasons why each of these charges was "not well founded."

The foregoing met the requirements for asserting the Claims under the APA. Broadview provided a reasonable description of the facts that gave rise to the Claims, it provided the amount and method of computation of the Claims, and it referred to the APA provisions and the documents upon which the Claims is based.

The Supplemental Claim Notice sets forth a different claim. Like the original Verizon Disputes Claim, it asserts that the January through March 2008 financial statements did not fairly represent the financial position and operations of Lightwave. The Supplemental Claim Notice also asserts that the reason the financial statements did not fairly represent the financial position and operations of Lightwave was that Lightwave excluded from COGS some of the Verizon charges that Lightwave disputed. It differs from the original Verizon Disputes Claim, however, in identifying which Verizon charges should have been included in COGS. Broadview now contends that

Lightwave should have included (or at least reserved for) in COGS 61.9% of the $414,038 of disputed Verizon charges. Broadview uses 61.9% because when Lightwave settled all its disputes with Verizon the amount it paid was 61.9% of the total disputes.

The term "claim" is defined as "the aggregate of operative facts giving rise to a right enforceable by a court." *Black's Law Dictionary* 264 (8th ed. 1999). This definition is consistent with the term "claim" as used in the APA, which required that the party giving notice of a claim include in reasonable detail the facts giving rise to the claim. APA § 11.3(a). Here, the "aggregate of operative facts" of the Verizon Disputes Claim as asserted in the Claims Notice differs significantly from the "aggregate of operative facts" of the claim asserted in the Supplemental Claim Notice. In the former, Broadview claims that Lightwave's January – March 2008 income statement was understated because Lightwave should have included 15 specifically identified Verizon charges totaling $86,132 in COGS. The Verizon Disputes Claim is based on Broadview's contention that the 15 specific charges were "not well founded" and it provides Broadview's reasons for making that assertion about the charges. In the Supplemental Claim Notice, Broadview contends that Lightwave should have reserved in COGS 61.9% of the $414,038 Verizon charges because that was the percentage Lightwave paid to settle all Verizon disputes. The 15 charges that were allegedly "not well founded" in the Verizon Disputes Claim are not relevant to the new claim. The settlement between Verizon and Lightwave, which is central to the new Supplemental Claim Notice, is not relevant to the Claims Notice. The "aggregate of operative facts" between the two claims differs significantly.

Broadview contends that its "claim" is that Lightwave understated its COGS in the January-March 2008 income statement and therefore the income was understated. It contends that the reasons why COGS was understated does not define the claim, but only the damages for the claim. Therefore, Broadview argues that the claim asserted in the Supplemental Claims Notice is merely a different damage calculation for the Verizon Disputes claim asserted in the Claims Notice. The Court disagrees with this characterization of the Supplemental Claim Notice for the reasons stated above. But even if it were true, the new damage calculation would be time barred.

The APA required that the claim notice "shall" include the "amount or the method of computation" of the amount of the claim "if then known." APA § 11.3(a). The long-standing and substantial disputes between Lightwave and Verizon were at the heart of this bankruptcy case. Lightwave disputed more than $5.2 million of many different Verizon charges dating back several years. Lightwave and Verizon agreed to settle those disputes by Lightwave paying approximately $3.25 million. The settlement was noticed and approved by this Court by order entered on the same day as the order approving the sale under the APA. *See* Docket Nos. 159 and 174. A resolution of the Verizon disputes was a condition precedent to closing under the APA. *See e.g.*, Docket No. 159 at p.7. There is no dispute that Broadview was well aware of the settlement between Lightwave and Verizon, including that the settlement amount was approximately 61.9% of the disputed amount, even before the sale transaction closed, and long before the deadline for asserting claims under the APA. Broadview, therefore, had all of the information available to it by the APA deadline for asserting claims to make its updated "damage calculation" as set forth in the Supplemental Claim Notice.

12

Broadview contends that although it knew the percentage that Lightwave paid to settle the Verizon Disputed Claims, it did not know until after the deadline that the settlement was not based on a specific charge-by-charge resolution, but was only a global resolution of all disputes. While it appears difficult to determine the relevance of this point to a claim under the APA – given the nature of settlements – the fact remains that Broadview had all of the information available to it by the APA deadline to make the "damage calculation" in the Supplemental Claim Notice.

Finally, Broadview contends that Lightwave is not prejudiced by the change in the Supplemental Claim Notice and therefore it should be allowed to assert the claim. But the parties addressed in the APA the significance of "prejudice" to either party in the claim adjudication process described therein.  Specifically, Section 11.3(a) provides:

> (a)    Any Buyer Group Member or Seller Group Member (the "Indemnified Party") seeking indemnification hereunder shall give to the Party obligated to provide indemnification to such Indemnified Party (the "Indemnitor") a notice (a "Claim Notice") describing in reasonable detail the facts giving rise to any claim for indemnification hereunder and shall include in such Claim Notice (if then known) the amount  or the method of computation of the amount of such claim, and a reference to the provision of this Agreement or any other agreement, document or instrument executed hereunder or in connection herewith upon which such claim is based; <u>provided, that a Claim Notice in respect of any action at law or suit in equity by or against a third Person as to which indemnification will be sought shall be given promptly and in any event within 30 days after the action or suit is commenced; provided further that failure to give such notice shall not relieve the Indemnitor of its obligations hereunder except to the extent it shall have been prejudiced by such failure.</u>

APA § 11.3(a) (emphasis added).  The Court concludes that this provision is not ambiguous.  The Court interprets the phrase "such notice" in the last clause of Section 11.3(a) to refer to a "Claim Notice in respect of any action at law or suit in equity by or against a third person as to which indemnification will be sought . . . " as set forth in the

13

immediately preceding clause of that subsection.  Thus, the failure to give the Indemnitor (Lightwave) timely and proper notice would relieve the Indemnitor of its indemnification obligation where the Indemnitor has been prejudiced by the failure *but only* in the context of a notice that was required to be given "in respect of any action at law or suit in equity by or against a third person as to which indemnification will be sought . . . ."  APA § 11.3(a).

The Court reaches this conclusion for several reasons.  First, in referring to a claim notice generally, the APA established a clear, defined term – a "Claim Notice" – which the parties used in every other instance where they were referring to a claim notice in Section 11.3(a).  Only in the last clause did they use the term "such notice." Therefore, the term "such notice" is obviously intended to mean something other than a claim notice generally.  As used in the text, the term "such notice" is used to refer to notice in a specific instance – the instance described in the second to last clause of Section 11.3(a).  Second, to read "such notice" as applying to any claim notice would substantially undermine the protections Lightwave bargained for in obtaining the deadline for Broadview to assert claims against the Holdback Amount, and is therefore inconsistent with the intent of the parties as evidenced by the APA.

Having concluded that, under the APA and as pertinent here, prejudice to Lightwave is only to be taken into account where the failure to give a claim notice was in an entirely different context, the Court further concludes that it was the parties' intent that the amount of prejudice, if any, to Lightwave should not be a factor in the Court's analysis.  Stated otherwise, the APA established a certain bar date for Broadview to assert any claims against the Holdback Amount, and it would not be relieved of its failure to do

14

so by lack of prejudice to Lightwave in any instance other than that described in the second to last clause of Section 11.3(a).[2]

## CONCLUSION

For the reasons set forth in this memorandum decision, the Court will grant the Motion.

Copies to:

Jennifer L. Kneeland
7200 Wisconsin Avenue, Suite 800
Bethesda, Maryland 20814

Jason R. Scherr
2020 K Street NW
Washington, DC 20006

John F. Carlton, Esq., Bar No. 06591
Todd M. Brooks, Esq., Bar No. 28515
Seven Saint Paul Street
Baltimore, Maryland 21202-1636

Jeanne M. Crouse, Esq.
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

**END OF MEMORANDUM OF DECISION**

---

[2] In reaching this conclusion, the Court does not suggest that Lightwave has not been prejudiced by the Supplemental Claim Notice, which came after discovery concluded, but only that the APA does not contemplate that the extent of Lightwave's prejudice should be a factor in the Court's analysis.